[No. 5598.]
[No. 3276 C. A.]

## COORS v. REAGAN.

1. **Sales—Conditional Sales—Contract Construed.**

A contract recited that S. desired to have the "use" of plaintiff's building and saloon fixtures, for the purpose of conducting a saloon and of becoming "the owner of said fixtures when fully paid for"; that S. could use the premises for a specified term; that he should make specified monthly payments to plaintiff, until the total payments, after deducting monthly ground rent, should equal the cost of the building, fixtures, etc., and 8 per cent. per annum interest thereon; that S. should then be deemed the owner of the fixtures; that thereafter he should pay plaintiff $55 per month until the expiration of his ground lease; and

that S.'s failure to make the monthly payments should evidence a relinquishment of his rights under the contract. Held, that such contract evidenced a conditional sale of the fixtures, and not a lease thereof, S. becoming the owner upon reimbursing plaintiff for his investment interest.—Pp. 129, 130.

**2. Sales—Conditional Sales—Rescission—Seller's Duty.**

Under § 2027, Mills' Ann. Stats., if a conditional sale is rescinded, the seller, to make the transaction available against the buyer's creditors, is bound to immediately take and keep actual and continued possession of the personalty.—P. 132.

**3. Sales—Conditional Sales—Rights of Creditors.**

Secret liens, which treat the vendor of personal property who has delivered possession of it to the purchaser as the owner until the payment of the purchase money, cannot be maintained. They are constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the purchaser holding the possession.—P. 132.

*Appeal from the District Court of Teller County.*
*Hon. Louis W. Cunningham, Judge.*

Replevin by A. Coors against James T. Reagan. From a judgment for defendant, plaintiff appeals.
*Affirmed.*

Mr. C. E. BRADY, for appellant.

Messrs. HUFF & FERGUSON and Mr. SAMUEL S. LARGE, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This was an action of replevin; plaintiff (appellant here) claiming to be the owner and entitled to the possession of certain personal property, consisting of bar fixtures, which he alleged defendant had wrongfully and unlawfully taken possession of and refused to return, upon demand.

Defendant denied the ownership of plaintiff, denied his right to possession, alleged that the property was the property of one Sholz, and that the property was taken by defendant as the property of

Sholz, under and by virtue of certain writs of attachment issued out of a justice court to him, as constable.

No question as to the validity of the attachment writs, under which defendant held the property, is presented, and it is admitted that Sholz was in the possession of the property at the time the writs of attachment were levied.

Judgment was for defendant; from which is this appeal.

At the trial, which was to the court, without a jury, appellant, to maintain his action, relied on a written contract between himself and Sholz, entered into February 15, 1900, which recited that appellant was the owner of a leasehold estate in a lot in the town of Victor, at a monthly rental of $55 per month, expiring November 24, 1906, upon which lot he had erected a brick building, at an expense of about $3,600, and furnished the same with saloon fixtures at a cost of about $1,000; that appellee was desirous of having the use of the building and saloon fixtures, for the purpose of carrying on a saloon during the term of the lease, "and of becoming the owner of said saloon fixtures when fully paid for"; in consideration whereof, it was agreed between the parties:

"That said second party (Sholz) shall have the right to the use and occupation of said premises and fixtures from the 15th day of February, A. D. 1900, to the 24th day of November, A. D. 1906, on the following terms and conditions, viz.:   He shall pay to said party of the first part the sum of $125.00 per month in advance for the first three months from this date; and afterwards the sum of $150.00 per month in advance for each and every succeeding month until the sum total of said payments (after deducting $55.00 per month as ground rent) shall equal the cost of said saloon fixtures, and the full cost

and expense of the building erected on said premises by the said party of the first part as aforesaid, and all expenditures by him incurred for insurance, taxes and repairs, together with interest on all of the aforesaid items of cost and expense, at the rate of 8 per cent. per annum from the time and times when such cost and expense was incurred by said party of the first part, at which time said party of the second part shall be deemed the owner of said saloon fixtures, and thereafter the said party of the second part shall pay to said party of the first part the sum of $55.00 per month in advance during the remainder of the unexpired term of said lease."

Other provisions of the contract are irrelevant, except one, to the effect that upon a failure to make the monthly payments, it shall be taken and considered as a relinquishment of all claims, rights and privileges under the contract, and appellant may enter and take possession of the premises on demand.

It is admitted that appellee and the attachment creditors of Sholz, at whose instance the attachment writs were issued and levied upon the saloon fixtures, were without actual or constructive notice or knowledge that appellant claimed any interest in the property.

Counsel for appellant contends that the contract is a lease and not a conditional sale, because the words, "use of said premises and saloon fixtures," and "the right to the use and occupation of said premises and fixtures," are found in the contract, citing *Singer Mfg. Co. v. Converse*, 23 Colo. 250, in support of this contention.

A comparison of the instrument under consideration in the case cited with the contract here under consideration will readily disclose the marked distinction between the two. There, the instrument was denominated a "lease," the payments stipulated for

were "rent," and seemed to be reasonable, the term was definite and certain; here, the contract is not called a lease, nor is the word "rent" contained in it, except to fix the amount of ground rental reserved in the lease which appellant held upon the lot; the payments are large, out of all proportion to the investment made by appellant; in addition to which the party of the second part agrees to pay eight per cent. per annum net upon the full cost and expense of the building and fixtures, and all expenses for taxes, interest and repairs, and when the amount paid (after deducting the ground rent) shall equal the total investment of appellant, with interest at eight per cent. per annum, the party of the second part shall be deemed the owner of the saloon fixtures, and shall occupy the building and pay the ground rent only during such unexpired term of the lease.

None of the last above noted conditions are found in the instrument ruled in *Singer Mfg. Co. v. Converse;* the case cited cannot be considered an authority in support of counsel's contention that the contract in this case should be construed to be a lease, and not a conditional sale; it seems clear, from a reading of the contract before us, the essence of which is quoted above, that the contracting parties intended to enter into a conditional sale of the saloon fixtures, and the unexpired term of the ground leased, upon which the building stood, and that when appellant should be reimbursed his original investment of $4,600, taxes, insurance and repairs, with interest at eight per cent. per annum, the party of the second part should be deemed the owner of the property.

In *Gerow v. Castello,* 11 Colo. 560, an instrument denominated a lease, which contains more of the elements of a lease than the contract we are here considering, was held to be a conditional sale.

The rule holding contracts of this character conditional sales and not leases is thus stated in 6 Am. & Eng. Enc. Law (2nd ed.) 447:

"It frequently happens, however, especially in the case of the transfer of such articles as sewing machines, pianos, organs, and furniture, that in order to afford the vendor a better security against the claims of third persons, and to avoid the inconvenience of a chattel mortgage, such transfers are made under the name of leases and the payments to be made are denominated rent. There has been some conflict among the authorities as to the exact nature of such transactions, but in most jurisdictions the courts, looking to what is obviously the real intent of the parties, hold these contracts to be conditional sales and not contracts of letting and hiring, notwithstanding the use of terms appropriate to such contracts. If it appears from the face of the contract that the transaction is in fact a sale, and not a renting, it is immaterial what name the parties choose to give it."

The numerous cases cited fully support the rule laid down in the text above quoted. But counsel for appellant says that if the contract is held to be a conditional sale, it was abrogated by appellant before the attachment writs were levied upon the fixtures. This contention is based upon a letter written by appellant to Sholz, to the effect that as he (Sholz) was behind in his payments, he had no rights under the contract, but that he might remain in the saloon at a monthly rental of $80 per month, payable in advance, and that, pursuant to this letter, Sholz sent appellant a check for $80, which was dishonored. This contention of counsel is disposed of by the last paragraph of the letter, which is as follows:

"If * * * you pay $80.00 per month promptly in advance, I will let this matter stand for

a while under the contract as it is, but the contract will not be changed. I will just suffer you to stay on such conditions.''

If it be conceded, however, that the contract, as between the parties, was rescinded by the letter of appellant to Sholz, then, as against the creditors of Sholz, it became necessary for appellant to take immediate possession of the property and continue in the actual and continued possession of it, to make the transaction of any avail as against the creditors of Sholz.—Mills' Ann. Stats., § 2027.

This appellant did not do, and the attempted rescission as against the creditors, without notice or knowledge thereof, must be held to be fraudulent and void.

Finally, counsel for appellant contends that if the contract should be held to be a conditional sale, still the judgment should be reversed, upon the theory that the law of conditional sales is not settled in this state. This position is untenable. *George v. Tufts*, 5 Colo. 162, 165, decided in 1879, announced this doctrine:

''Secret liens, which treat the vendor of personal property who has delivered possession of it to the purchaser as the owner until the payment of the purchase-money, cannot be maintained. They are constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the purchaser holding the possession.''

*Gerow v. Castello*, 11 Colo. 560, 563, while not citing *George v. Tufts*, announced the same rule.

*Weber v. Diebold Safe & Lock Co.*, 2 Col. App. 68, 69, quoted approvingly the rule announced in *George v. Tufts*, and said:

''The secret contract, as between the parties, was good, but was void as to creditors. Appellee

had invested Wood with the possession and all
*indicia* of ownership. It was not a bailment, but a
sale subject to defeasance upon a subsequent con-
dition, an arrangement only known to the parties
themselves. A party who, by his own acts, places
another in the ostensible position of owner, should
be estopped to deny such ownership. Private
transactions of this character are not favored, and
are opposed to public policy.''

In *Jones v. Clark,* 20 Colo. 353, the subject of
conditional sales is again before this court. Mr.
Justice Goddard, writing the opinion, overruled
*George v. Tufts,* and affirmed *Gerow v. Castello;* the
opinion does not mention *Weber v. Diebold Safe &
Lock Co.* Counsel for appellant contends that
*George v. Tufts,* having been overruled by *Jones v.
Clark,* the law in this state is thereby unsettled.
Counsel misconceives the effect of the latter case
upon the former; while it is true that *George v. Tufts*
was overruled, it was not overruled upon the point
here involved; the opinion, in *George v. Tufts,* went
beyond the proposition above quoted, and held that
notice of a lien reserved by the vendor under a con-
ditional sale does not affect the rights of creditors;
in other words, the court in that case held that a con-
ditional sale reserving a secret lien to the vendor was
good as against creditors or subsequent holders, with
or without notice. This latter announcement alone
was overruled by *Jones v. Clark.* This is manifest
from the language of Mr. Justice Goddard found at
page 362 of the opinion in *Jones v. Clark:*

''The rule announced in *Gerow v. Castello,
supra,* is not only sustained by the great weight of
authority, but is also founded upon the better reason,
and in adhering thereto we place ourselves in line
with the general current of authority. It is cer-
tainly equitable and can in no instance work a hard-

ship to third parties to uphold conditional sales of personal property as valid against those who purchase the same with notice, and creditors who become such with knowledge of the vendor's rights, and where no false credit has been induced by the ostensible ownership and possession of the vendee.''

In the *Jones-Clark case,* the court below held, as a matter of law, that it was, immaterial whether the plaintiffs had notice of the conditional sale before giving credit to the vendee, and disregarded testimony introduced to show that they had such knowledge; the case .was reversed and the cause remanded upon this ground alone.

Our conclusion is that, under the facts of this case and the established law of this state applicable to conditional sales, the judgment of the court below was ·right and will be· affirmed.      *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concur.